---

**UNITED STATES OF AMERICA v. JOSEPH BONGIOVANNI, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**
**2025 U.S. Dist. LEXIS 167097; 2025 LX 325000**
**19-CR-227**
**August 27, 2025, Decided**
**August 27, 2025, Filed**

---

**Editorial Information: Prior History**

United States v. Gerace, 2021 U.S. Dist. LEXIS 172323, 2021 WL 4134886 (Sept. 10, 2021)

**Counsel**    {2025 U.S. Dist. LEXIS 1}For Joseph Bongiovanni, Defendant: Parker Roy MacKay, LEAD ATTORNEY, Kenmore, NY USA; Robert Charles Singer, LEAD ATTORNEY, Singer Legal PLLC, Williamsville, NY USA; Timothy W. Hoover, LEAD ATTORNEY, Hoover & Durland LLP, Buffalo, NY USA.

U.S. Attorneys: Joseph M. Tripi, LEAD ATTORNEY, U.S. Attorney's Office Federal Centre, Buffalo, NY USA; Nicholas Cooper, LEAD ATTORNEY, U.S. Attorney's Office - Buffalo Federal Centre, Buffalo, NY USA; Casey L. Chalbeck, U.S. Attorney's Office - Bflo Federal Centre, Buffalo, NY USA; Elizabeth M. Palma, United States Attorney's Office - Buffalo Federal Centre, Buffalo, NY USA.

**Judges:** LAWRENCE J. VILARDO, UNITED STATES DISTRICT JUDGE.

**Opinion**

**Opinion by:**    LAWRENCE J. VILARDO

**Opinion**

## DECISION & ORDER

Before the Court are two motions filed by the defendant, Joseph Bongiovanni, following his second jury trial.1 First, Bongiovanni moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29, Docket Item 1446; second, he moves for an inquiry into alleged juror misconduct, Docket Item 1572. After the government responded to both motions, Docket Items 1487 and 1580, Bongiovanni replied in support of his Rule 29 motion, Docket Item 1534. The Court then heard oral argument and reserved decision on both motions.2 See Docket Items{2025 U.S. Dist. LEXIS 2} 1558 and 1588. For the reasons that follow, this Court denies Bongiovanni's motions.

## LEGAL PRINCIPLES

### I. RULE 29 MOTION

A defendant seeking a judgment of acquittal faces a heavy burden: A court can grant a Rule 29 motion only if no "rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt." *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (quoting *United States v. Moore*, 54 F.3d 92, 100 (2d Cir. 1995)). Stated another way, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *See United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

DISHOT                    1

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

If a court reserves ruling on a Rule 29 motion until after the jury has returned a verdict, it "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b); *see also United States v. Velasquez*, 271 F.3d 364, 371 (2d Cir. 2001). Here, Bongiovanni first moved under Rule 29 following the close of the government's case. *See* Docket Item 1247. Because the Court first reserved ruling on Bongiovanni's Rule 29 motion at that time, *see id.*, it examines whether the government met its burden based on the evidence presented in the government's case in chief.

In conducting its analysis, the Court "must view the evidence in the light most favorable to{2025 U.S. Dist. LEXIS 3} the government, crediting every inference that could have been drawn in the government's favor." *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (quoting *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017)). That being said, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks omitted).

## II. INQUIRY INTO ALLEGED JUROR MISCONDUCT

"[A] defendant who seeks a new trial based on allegations of juror misconduct faces a very high hurdle." *United States v. Stewart*, 317 F. Supp. 2d 432, 436 (S.D.N.Y. 2004). A post-verdict inquiry of jurors is appropriate only when there is "clear, strong, substantial[,] and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)); *see Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir. 2003) (explaining "that possible *internal* abnormalities in a jury will not be inquired into *except 'in the gravest and most important cases'*" (quoting *United States v. Dioguardi*, 492 F.2d 70, 79 n.12 (2d Cir. 1974))). Moreover, "an allegation of intra[-]jury pressure that does not rise to the level of physical coercion is insufficient to require a post-verdict jury inquiry." *See United States v. Yeagley*, 706 F. Supp. 2d 431, 434 (S.D.N.Y. 2010) (emphasis omitted).

Additionally, Rule of Evidence 606(b)(1)-sometimes referred to as the "no- impeachment rule"-"assure[s] jurors that, once their verdict{2025 U.S. Dist. LEXIS 4} has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations." *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 211, 137 S. Ct. 855, 197 L. Ed. 2d 107 (2017). The rule explicitly provides that:

> [d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.Fed. R. Evid. 606(b)(1). That rule is subject to only three narrow exceptions: "A juror may testify about whether" the jury improperly considered "extraneous prejudicial information"; whether "an outside influence was improperly brought to bear on any juror"; or whether the jury made a clerical mistake when completing the verdict form. *Id.* (b)(2).

## DISCUSSION3

### I. RULE 29 MOTION

### A. Count 1

Count 1 charged Bongiovanni with conspiring to defraud the United States in violation of 18 U.S.C. § 371. *See* Docket Item 1193 at 4-17.4 Bongiovanni first argues that there was a prejudicial variance

DISHOT                                    2

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

because the conspiracy charged in the indictment, which included bribery, was not the conspiracy{2025 U.S. Dist. LEXIS 5} that the government proved.

As an initial matter, inconsistency between a jury's verdict on a conspiracy count and its verdict on a related substantive count is not a basis for a judgment of acquittal. *See United States v. Acosta*, 17 F.3d 538, 544-45 (2d Cir. 1994) (explaining that "it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty"). The exception to this rule is if "the necessary proof on the substantive charge is identical [to] that required to convict on the conspiracy count." *United States v. Chen*, 378 F.3d 151, 164 (2d Cir. 2004) (quoting *United States v. Palmieri*, 456 F.2d 9, 12 (2d Cir. 1972)). But here, even assuming that the evidence and necessary proof on the substantive bribery count were identical to the evidence and necessary proof on the conspiracy charge, that would not dispose of count 1.

As the government observes, Docket Item 1487 at 89, count 1 charged a conspiracy with two separate objectives-(1) to defraud the United States and the Drug Enforcement Administration ("DEA") and (2) to commit bribery, *see* Docket Item 1193 at 4-5-and the government had to prove only one of those objectives. Thus, the jury could convict Bongiovanni on count 1 if it found that he defrauded the United States and the DEA *without* receiving{2025 U.S. Dist. LEXIS 6} money in exchange for his efforts. And in fact, there was ample evidence suggesting that Bongiovanni did just that.

Nor is it true, as Bongiovanni contends, that he was not on notice of the charged conduct absent bribery. On the contrary, the manner and means section of the indictment alleges that

> [i]t was part of the conspiracy that, in exchange for payments he received *and in order to ingratiate himself to individuals whom he believed were members and associates of [Italian Organized Crime]*, [Bongiovanni] utilized his position as a DEA [special agent] to attempt to dissuade other members of law enforcement: from conducting investigations of his coconspirators, friends, associates[,] and individuals [Bongiovanni] believed to be connected to or associated with [Italian Organized Crime].*Id.* at 5 (emphasis added). Thus, even if the government proved only that Bongiovanni defrauded the DEA without accepting bribes, that would be sufficient to maintain the conviction on count 1.

Bongiovanni also argues that the jury's special finding about the amount of drugs in count 3 necessarily means that it found that he did not conspire with Michael Masecchia and others in the Serio Drug Trafficking{2025 U.S. Dist. LEXIS 7} Organization ("DTO") as charged in count 1. Docket Item 1446 at 9. According to Bongiovanni, the jury's finding that less than 50 kilograms of marijuana was foreseeable to him indicates that the jury found him guilty only of conspiring to protect his longtime friend, Lou Selva, with respect to the basement grow at Selva's house, not of conspiring to protect the much larger DTO. *Id.*

But to reach that conclusion, this Court must speculate as to what was in the jurors' minds-which the Second Circuit has explicitly prohibited. *See Acosta*, 17 F.3d at 545. Indeed, even when verdicts are clearly inconsistent, "the court is not to try to guess which of the inconsistent verdicts is the one the jury really meant." *Id.* (citations and internal quotation marks omitted). As the Supreme Court explained in *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), "the jury, though presumed to follow the instructions of the trial court, may make its ultimate decisions 'for impermissible reasons,' such as 'mistake, compromise, or lenity,' [and] its power to do so is 'unreviewable.'" *Acosta*, 17 F.3d at 545 (internal citations omitted) (quoting *Powell*, 469 U.S. at 63, 65).

Here, the only definitive conclusion the Court can draw from the jury's verdict on count 3 is that the government did not prove that Bongiovanni could reasonably{2025 U.S. Dist. LEXIS 8} foresee that

DISHOT                                            3

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the conspiracy involved more than 50 kilograms of marijuana. To infer that the jury also concluded that Bongiovanni did not conspire with Masecchia is mere speculation. Moreover, there was ample evidence that Bongiovanni used his position as a DEA agent to cover for Masecchia even if Bongiovanni received no bribes and even if he did not know the full scope of the drug conspiracy.

Based on the same theory-that the jury must have convicted him only of "protecting Lou Selva and not reporting to the DEA that Selva was growing marijuana in his residence," Docket Item 1446 at 23-Bongiovanni argues that the government failed to prove a *Klein* conspiracy. *See United States v. Klein*, 247 F.2d 908 (2d Cir. 1957); *United States v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996) (explaining that to prove a *Klein* conspiracy, "the government [must] show (1) [that defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy" (citation omitted)). That argument fails for the same reason. Bongiovanni asks the Court to do precisely what the Second Circuit has clearly instructed courts not to do: speculate on the jury's rationale for reaching its decision. *See Acosta*, 17 F.3d at 545.

For all those reasons, this{2025 U.S. Dist. LEXIS 9} Court denies Bongiovanni's rule 29 motion with respect to count 1.

**B. Count 3**

Bongiovanni's argument on count 3 is similar. Essentially, Bongiovanni says that because the jury attributed only the smallest amount of marijuana to him, "the trial lacked proof that he conspired to help Selva possess any marijuana [Selva] grew with an intent to distribute it." Docket Item 1446 at 31. "At best," Bongiovanni says, the evidence "could establish only knowledge of Selva's simple possession under 21 U.S.C. § 844." Docket Item 1446 at 31.

Once again, Bongiovanni asks this Court to read too much into the jury's verdict. As explained above, the only thing the Court can glean from the jury's verdict is that the government failed to prove that more than 50 kilograms of marijuana was reasonably foreseeable to Bongiovanni as part of the conspiracy. But that does not, as Bongiovanni claims, permit the inference that the jury found only that he protected Selva's small grow operation or that the government's proof on Bongiovanni's involvement in the Serio DTO conspiracy was lacking. Again, this Court is not permitted to speculate as to why the jury reached its verdict. *See Acosta*, 17 F.3d at 545.

What is more, there is a perfectly reasonable explanation{2025 U.S. Dist. LEXIS 10} for the jury's conclusion: Viewing Selva's testimony in the light most favorable to the government, there was plenty of evidence that Bongiovanni knew that Selva was distributing marijuana-with or without Masecchia-and agreed to protect either or both of them. And that might be true even if the government did not prove beyond a reasonable doubt that Bongiovanni could reasonably foresee more than 50 kilograms of marijuana was involved in the conspiracy.

For all those reasons, the Court denies Bongiovanni's Rule 29 motion with respect to count 3.

**C. Count 6**

Count 6 charged Bongiovanni with obstructing justice in connection with the DEA-6 report dated November 4, 2014, in which he said that Robert Kaiser was "no longer viable" as a confidential source. *See* Docket Item 1193 at 15, 29. Bongiovanni again argues that the jury's drug weight finding on count 3 makes it clear that the jury did not connect him to the Serio DTO. This Court rejects that conclusion for the same reason that it rejected it in connection with counts 1 and 3. Any determinations beyond the marijuana drug weight about what the jury thought as to whom and what the conspiracy involved is impermissible speculation.

**D. Count 7**

DISHOT                                                                 4

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Count{2025 U.S. Dist. LEXIS 11} 7 charged obstruction of justice related to the DEA-6 report dated January 28, 2015, which closed the Wayne Anderson case file. Bongiovanni argues that he should be acquitted on this count because the statements in that report were "undeniably factually true." *See* Docket Item 1446 at 43. For example, the case file was in fact closed. *Id.* at 45.

The government counters that Bongiovanni is taking too narrow a view of what it means to "falsify" a record. *See* Docket Item 1487 at 105. Rather than meaning that the words on the page must literally be false, the government explains, falsifying a document also includes "creat[ing] a document that misrepresents the truth." *Id.* (quoting *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016)). Moreover, the government says, there were statements in the report that were in fact false, such as the representation that Kaiser was "no longer viable" as a source. *Id.* at 105-06.

The Court agrees with the government that there was sufficient evidence for the jury to find that the January 2015 DEA-6 was a document that misrepresented the truth as part of Bongiovanni's overall scheme to protect his friends. The obstruction conviction on count 7 therefore stands. *See Rowland*, 826 F.3d at 108.

### E. Count 8

Count 8 charged Bongiovanni with obstruction{2025 U.S. Dist. LEXIS 12} of justice related to his statements about the extent of his relationship with Peter Gerace. Bongiovanni argues that his statement that he had only had "minimal in-person contact" with Gerace that "primarily consisted of random telephonic communication" was true. *See* Docket Item 1446 at 48-49.

But as the government observes, that argument fails to view the facts in the light most favorable to the government, as is required on a Rule 29 motion. *See* Docket Item 1487 at 110. The jury saw numerous text message exchanges between Bongiovanni and Gerace, as well as photographs of them socializing over the years. *See id.* at 110-11. That is more than enough evidence to support the jury's conclusion that Bongiovanni obstructed justice by minimizing his contacts with Gerace.

Thus, Bongiovanni's motion is denied as to count 8.

### F. Count 10

Count 10 charged obstruction of justice based on Bongiovanni's statements in a memorandum dated January 28, 2019, about Gerace and DEA Special Agent Anthony Casullo. More specifically, count 10 charged that Bongiovanni "made false and misleading statements . . . relating to the nature of his relationship and extent of his communications with [Gerace], in order to cover{2025 U.S. Dist. LEXIS 13} up, mislead, create a false justification for, and misrepresent the true relationship between [Bongiovanni and Gerace] and to misrepresent the true nature of the relationship between [Gerace] and [Casullo]." Docket Item 1193 at 32-33.

Bongiovanni first argues that his memorandum could not have misrepresented his relationship with Gerace because the memorandum does not discuss that relationship; rather, it discusses only the alleged relationship between Casullo and Gerace. *See* Docket Item 1446 at 51. But as the government observes, "a rational jury could have concluded that [Bongiovanni] was trying to divert attention away from his own corrupt relationship with Gerace and undermine his colleague's credibility." Docket Item 1487 at 115. And "[b]ecause a rational jury could have concluded that [Bongiovanni]'s stated purpose for writing the memorandum was false, it could have concluded both that the record was falsified *and* that [he] acted with corrupt intent." *Id.* This Court agrees with the government.

Bongiovanni also argues that the memo could not have obstructed justice because at the time it was submitted, Casullo was not responsible for investigating Gerace. Docket Item 1446 at 53.{2025 U.S.

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Dist. LEXIS 14} But that misses the point. The government's theory was not that Bongiovanni wrote the memorandum to interfere with Casullo's investigation; rather, it was that that Bongiovanni was attempting to discredit Casullo because Casullo "had first-hand knowledge of [Bongiovanni]'s . . . efforts to protect Gerace." *See* Docket Item 1487 at 115. In other words, according the to government, Bongiovanni wrote the memorandum to keep any federal authorities who were investigating the relationship between Gerace and Bongiovanni off Bongiovanni's trail. *See id.* at 115-16.

For all those reasons, Bongiovanni's motion is denied with respect to count 10.

### G. Count 11

Count 11 charged that in an interview with Special Agent David Carpenter on March 29, 2019, Bongiovanni, among other things, falsely "denied ever initiating contact with . . . Gerace." *See* Docket Item 1193 at 33. Bongiovanni says that because the question of whether he ever initiated contact with Gerace was so vague and ambiguous, he should be acquitted on this count. Docket Item 1446 at 54-56. The government counters first that this should have been raised on a Rule 12 motion to dismiss, Docket Item 1487 at 117-18, and second that the question was not{2025 U.S. Dist. LEXIS 15} vague, *id.* at 118-19.

This Court agrees with the government. Even if Bongiovanni did not waive this argument by not raising it sooner, the question of whether someone "ever initiat[ed] contact" with someone else is fairly straightforward-especially when viewing the evidence in the light most favorable to the government. Perhaps there were multiple ways to understand this question and the government therefore did not prove beyond a reasonable doubt that Bongiovanni purposefully made a false statement; that was a reasonable argument for the jury to consider. But the jury rejected that argument, and there was sufficient evidence to support the jury's conclusion.

For all those reasons, the Court denies Bongiovanni's motion as to count 11.

## II. MOTION FOR FURTHER INQUIRY

On June 20, 2025, the Court disclosed to the parties that it had received an unsolicited letter from one of the jurors in Bongiovanni's first trial. *See* Docket Item 1568 at 1. Among other things, the letter stated the following:

Before the trial even began [a juror] stated she would be attending Mr. Bongiovanni's sentencing. Another juror let her know she should at least wait for the trial to begin before she plans for that.{2025 U.S. Dist. LEXIS 16} The [first juror] replied the government has the charges against him, he must be guilty of something (after the trial she and several other jurors were concerned with letting the government down as they felt obligated to not disappoint them after all of the time and money they had spent on this trial)[.] So many jurors had seen news coverage and had already formed an opinion from the beginning. Then the trial ended and deliberations began. The first thing that occurred upon entering the deliberation room was a vote to determine who thought Mr. Bongiovanni was guilty and who thought he was not guilty. There was no prior discussion of what he was guilty of. There was no discussion at all as required to make a fair decision before the vote took place. There was yelling and name calling by the guilty voters. They wanted the not guilty voters to prove his innocence. It's easy to understand how someone could change their mind just to not have to endure this especially for weeks.*Id.* at 2. Based on the contents of that letter, Bongiovanni moves for "an evidentiary hearing . . . and, if warranted, further inquiry into possible juror misconduct and jurors' failure to follow instructions." Docket{2025 U.S. Dist. LEXIS 17} Item 1573 at 2.

As noted above, a post-verdict inquiry into alleged juror misconduct is permissible only when there is

DISHOT                                                       6

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"clear, strong, substantial[,] and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *Ianniello*, 866 F.2d at 543 (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). For the reasons that follow, the unsolicited letter from the juror in the first trial does not meet this high bar.

To start, this Court already has addressed the allegation that "the not guilty voters" were asked by other jurors "to prove [Bongiovanni's] innocence." *See* Docket Item 1568 at 2. Following his first trial, Bongiovanni moved for a new trial on the counts on which he was convicted under Federal Rule of Criminal Procedure 33. Docket Item 908. Among other things, Bongiovanni argued that a note written by a juror during deliberations-which indicated to the Court that other jurors had made comments, including "I knew [Bongiovanni] was guilty from day 1" and "[y]ou have to prove to us that he is innocent"-warranted a new trial. *Id.* at 12; *see United States v. Bongiovanni*, 2024 U.S. Dist. LEXIS 128252, 2024 WL 3487914, at *12 (W.D.N.Y. July 19, 2024). This Court denied the rule 33 motion, finding that "those comments d[id] not necessarily show that the jurors did not follow the Court's instructions." *Bongiovanni*, 2024 U.S. Dist. LEXIS 128252, 2024 WL 3487914, at *12.

"The first comment," the Court explained, "while indicating a tentative conclusion,{2025 U.S. Dist. LEXIS 18} does not conclusively demonstrate that the juror refused to keep an open mind in deliberations." *Id.*; *see Brown v. Greiner*, 2003 U.S. Dist. LEXIS 22589, 2003 WL 22964395, at *13 (E.D.N.Y. Oct. 2, 2003) ("Our criminal justice system does not contemplate that jurors will avoid forming tentative conclusions about the guilt or innocence of a defendant before all the evidence has been presented and the judge releases them to the jury room for deliberations. All that is required of a juror is that he or she keep an 'open mind' and remain receptive to the parties['] arguments and evidence."). "And the second comment," the Court continued, "could easily have occurred in the context of a holdout situation during deliberations, i.e., asking the juror in the minority to convince the others of her conclusion, rather than a failure to apply the proper burden of proof." *Bongiovanni*, 2024 U.S. Dist. LEXIS 128252, 2024 WL 3487914, at *12. Moreover, the Court found, "[t]his conclusion is bolstered by the fact that the jury reached a not-guilty verdict on one count and failed to reach a verdict on 12 others." *Id.*

Those same conclusions apply here. Contrary to the allegation that a juror had prejudged Bongiovanni's guilt, the jury unanimously found Bongiovanni not guilty on one of the obstruction counts. And all the jurors-including the juror who wrote the note-{2025 U.S. Dist. LEXIS 19} found Bongiovanni guilty on the two counts on which he was convicted at the first trial.

In addition, as the government observes, Docket Item 1580 at 10-11, the timing of the juror's alleged comments regarding Bongiovanni's guilt is not clear. The comments might have been made before the Court gave its preliminary instructions or even before voir dire began, in which case the comments give no indication that the juror did not follow the instructions once given. So the note does not provide "incontrovertible evidence" of misconduct.5 *See Ianniello*, 866 F.2d at 543.

Finally, any inquiry that would address the allegations in the juror's note is barred by Rule 606(b). *See United States v. Baker*, 899 F.3d 123, 132 (2d Cir. 2018) (explaining that "Rule 606(b) of the Federal Rules of Evidence prohibited the jurors from impeaching their verdict by testifying about the effect of such deliberations on the verdict"). Here, the bulk of the juror's allegations deal with the internal workings of the jury rather than purported outside influences.6 Thus, the requested inquiry would be "futile from the start." *See id.*; *see also United States v. Richards*, 241 F.3d 335, 343, 43 V.I. 337 (3rd Cir. 2001) (affirming denial of motion for new trial based on juror's post-trial affidavit attesting that he "overheard two jurors comment in the presence of other jurors and prior to the close of the evidence that{2025 U.S. Dist. LEXIS 20} they believed [the defendant] was guilty" because inquiry into "whether or not the premature statements affected their verdict" would be prohibited by Rule 606(b)).

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

As the Second Circuit has recognized, "[b]ecause . . . of the 'evil consequences' likely to result from post-verdict inquiries-'subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering[,] and creating uncertainty in jury verdicts'-such inquiries are not undertaken in the absence of reasonable grounds." *Baker*, 899 F.3d at 131 (quoting *Ianniello*, 866 F.2d at 543). For the reasons explained above, the juror's note here does not meet the high bar for such an inquiry, and Bongiovanni's motion therefore is denied.

<u>CONCLUSION</u>

For all those reasons, this Court DENIES Bongiovanni's motions for a judgment of acquittal under Rule 29, Docket Item 1446, and for inquiry into alleged juror misconduct, Docket Item 1572.

SO ORDERED.

Dated: August 27, 2025

Buffalo, New York

*/s/ **Lawrence J. Vilardo***

**LAWRENCE J. VILARDO**

UNITED STATES DISTRICT JUDGE

**Footnotes**

1

Bongiovanni's first trial resulted in a mistrial on 12 of 15 counts. *See* Docket Item 867. More specifically, the jury was unable to reach a unanimous verdict on counts 1-11 and 14, acquitted Bongiovanni on count 12, and convicted Bongiovanni on counts 13 and 15. *See id.* The Court later granted a judgment of acquittal on count 5. Docket Item 1077. The remaining 11 counts were retried beginning in July 2024. *See* Docket Items 1095 and 1193.

2

The Court also heard argument and reserved decision on the parties' objections to the Presentence Investigation Report. *See* Docket Item 1588. The Court will issue a separate decision addressing those objections.

3

The Court assumes the reader's familiarity with the factual background and will recount the facts only as necessary to explain its decision.

4

Page numbers in docket citations refer to ECF pagination.

5

Additionally, as the government observes, this particular juror appears to be far from impartial. *See* Docket Item 1580 at 7-8. In addition to the excerpt above, the juror's letter stated that Bongiovanni "has always been an exemplary citizen and an outstanding[,] accomplished member of the DEA his entire career." Docket Item 1568 at 2. The juror further implored the Court not to sentence Bongiovanni to time in prison. *See id.* Moreover, the Court has observed this juror with Bongiovanni's family at several court proceedings following the first trial.

6

DISHOT                                                                8

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The one possible exception is that the juror alleges that "many jurors had seen news coverage and had already formed an opinion from the beginning." Docket Item 1568 at 2. The Court extensively questioned the jurors about exposure to news coverage during voir dire, and it is true that many jurors had seen some coverage. But all of them assured the Court that they could still be impartial, and the letter does not give any indication-other than pure speculation-that those answers were untruthful. Nor does the letter give any nonspeculative indication that the jurors failed to follow this Court's instruction to shield themselves from any further news coverage once they had been sworn in as jurors.

DISHOT                                    9

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

| | |
|---|---|
| 02:12PM | 1 |
| 02:12PM | 2 |
| 02:12PM | 3 |
| 02:12PM | 4 |
| 02:12PM | 5 |
| 02:12PM | 6 |
| 02:12PM | 7 |
| 02:12PM | 8 |
| 02:12PM | 9 |
| 02:12PM | 10 |
| 02:12PM | 11 |
| ·02:12PM | 12 |
| 02:12PM | 13 |
| 02:13PM | 14 |
| 02:13PM | 15 |
| 02:13PM | 16 |
| 02:13PM | 17 |
| 02:13PM | 18 |
| 02:13PM | 19 |
| 02:13PM | 20 |
| 02:13PM | 21 |
| 02:13PM | 22 |
| 02:13PM | 23 |
| 02:13PM | 24 |
| 02:13PM | 25 |

1  this case was even indicted, after it was charged by

2  complaint, before it was indicted.  Those -- this was part of

3  the investigation long before sentencing was even on the

4  horizon because the FBI was investigating other potential

5  victims.

6       And the M.O. of the defendant, as demonstrated in

7  this trial, is the exact same M.O. demonstrated in those 302s.

8  He's reaching out over social media, Facebook or whatever,

9  persuading young teenaged girls to have sex with him.

10       And those young females in those 302s are from

11  different parts of the country, one's Illinois, one's Montana,

12  one's Florida, and they all tell the same story.  So there's

13  no doubt that that happened.  They all corroborate each other.

14  They corroborate each other, they're corroborated by the trial

15  evidence.

16       And the one, K.R., as I've mentioned already, the

17  exchanges he had with her are part of the Facebook account

18  that we put into evidence, and he's talking with her after

19  finding out she's 16 --

20       **THE COURT:**  Let me ask -- let me interrupt you just

21  one second, so -- so, I don't need to hold a hearing on the

22  veracity of the -- what's in the 302s with respect to the

23  other complainants, because of the consistency between them

24  and what the defendant did here, what was proven that the

25  defendant did here.  And also because of the other incidences

| 89 SCT 1082, 22 LED2D 281, 394 US 286  HARRIS v NELSON |
|---|

**GEORGE B. HARRIS, Judge of U. S. District Court for the Northern District of California, Petitioner,**

*vs.*

**LOUIS S. NELSON, Warden**

**394 US 286, 22 L Ed 2d 281, 89 SCT 1082, reh den 394 US 1025, 23 L Ed 2d 50, 89 S Ct 1623**

[No. 199]

**Argued December 9, 1968.**

**Decided March 24, 1969.**

## SUMMARY

An inmate of the California State Prison at San Quentin, after exhausting his state remedies pertaining to his conviction for possession of marijuana, filed a habeas corpus petition in the United States District Court for the Northern District of California, alleging that he had been convicted on illegally seized evidence, since his arrest and the incidental search had been based solely on the statements of an unreliable informant.  After the District Court granted an evidentiary hearing, the prisoner, seeking proof of the informant's unreliability, served interrogatories on the prison warden pursuant to Rule 33 of the Federal Rules of Civil Procedure. The warden filed objections to the interrogatories, alleging the absence of authority for their issuance, but the District Judge, without stating his reasons, disallowed the objections and directed that the interrogatories be answered.  The warden then applied to the Court of Appeals for the Ninth Circuit for a writ of mandamus or prohibition, and the Court of Appeals vacated the order of the District Court, holding that the discovery provisions of the Federal Rules of Civil Procedure were not applicable to habeas corpus proceedings and that 28 USC § 2246, the statutory provision specifically relating to the use of interrogatories in habeas corpus proceedings, did not authorize their use for discovery.  (378 F.2d 141.)

1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

On certiorari, the United States Supreme Court reversed and remanded. In an opinion by Fortas, J., expressing the views of five members of the court, it was held that although Rule 33 was not applicable to habeas corpus proceedings and 28 USC § 2246 did not authorize interrogatories except for the purpose of obtaining evidence from affiants where affidavits were admitted in evidence, in appropriate circumstances a District Court, confronted by a petition for habeas corpus which established a prima facie case for relief, could use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to eliciting facts <*pg. 282> necessary to help the court to "dispose of the matter as law and justice require," under 28 USC § 2243, relating to habeas corpus hearings generally.

Black, J., dissenting, expressed doubt that in the absence of some valid delegation of legislative power by Congress, the Supreme Court had power to direct lower courts to write new laws providing for discovery in habeas corpus cases.

Harlan, J., joined by White, J., dissented on the ground that the problem of discovery in habeas corpus proceedings should be dealt with not case by case but through the exercise of the Supreme Court's rule- making power.

Stewart, J., dissented for the reason that claims collaterally contesting the admission of evidence allegedly seized in violation of the Fourth Amendment should be entertained only under limited and special circumstances.

## RESEARCH REFERENCES

1 Am Jur 2d, Actions §§ 43-45; 23 Am Jur 2d, Depositions and Discovery § 154; 32 Am Jur 2d, Federal Practice and Procedure §§ 14, 15; 39 Am Jur 2d, Habeas Corpus §§ 8, 10, 143, 153

7 Am Jur Pl & Pr Forms, Discovery, Inspection, Mental and Physical Examination, Forms 7:551-7:567; 10 Am Jur Pl & Pr Forms, Habeas Corpus, Forms 10:491 et seq.

4 Am Jur Trials 1, Discovery-Written Interrogatories §§ 1 et seq.

US L Ed Digest, Courts § 505; Habeas Corpus §§ 1, 2, 109, 118, 121; Rules of Court § 3

ALR Digests, Action or Suit § 57; Criminal Law §§ 165, 165.5; Habeas Corpus §§ 1, 2, 40, 43; Rules § 7

L Ed Index to Anno, Discovery; Habeas Corpus; Interrogatories; Rules of Court

ALR Quick Index, Discovery and Inspection; Federal Courts; Habeas Corpus; Interrogatories; Rules of Civil Procedure; Rules of Court

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## ANNOTATION REFERENCES

Necessity of hearing in federal habeas corpus proceedings challenging validity of conviction of crime.  9 L Ed 2d 1246.

Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure.  50 ALR2d 531.

Construction of federal statute (28 USC § 2255) dealing with vacation, by direct attack, of sentence in criminal case on ground that it violated Constitution or laws, or exceeded jurisdiction, or is otherwise subject to collateral attack.  20 ALR2d 976.<*pg. 283>

## HEADNOTES

### Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Habeas Corpus § 118; Rules of Court § 3 - interrogatories to parties**

1. Rule 81(a)(2) of the Federal Rules of Civil Procedure, relating to the applicability of those rules to various proceedings, renders Rule 33, relating to interrogatories to parties, inapplicable to habeas corpus proceedings.

**Habeas Corpus § 118 - interrogatories**

2. 28 USC § 2246, relating to evidence in habeas corpus proceedings, does not authorize interrogatories except for the purpose of obtaining evidence from affiants where affidavits were admitted in evidence.

**Habeas Corpus § 118 - discovery**

3. In appropriate circumstances a Federal District Court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to eliciting facts necessary to help the court to "dispose of the matter as law and justice require," under 28 USC § 2243, relating to habeas corpus hearings generally.

**Habeas Corpus § 1 - pre-eminent role**

4. The provision of the United States Constitution relating to the suspension of the writ of habeas corpus (Article I, § 9, Clause 2) recognizes the pre-eminent role of the writ, the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action.

LED2                                      3

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Habeas Corpus § 1 - scope and flexibility**

5. The nature of the writ of habeas corpus-its capacity to reach all manner of illegal detention and to cut through barriers of form and procedural mazes-demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected; the office of the writ is to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints.

**Habeas Corpus § 121 - hearings - duty to grant**

6. The federal courts not only may grant evidentiary hearings to habeas corpus applicants, but must do so upon an appropriate showing.

**Habeas Corpus § 118, 121 - processing of claims - power of inquiry - presentation of facts**

7. There being no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, the power of inquiry on federal habeas corpus is plenary, and petitioners in habeas corpus proceedings are entitled to a full opportunity for presentation of the relevant facts.

**Habeas Corpus § 2 - characterization as "civil" - uniqueness**

8. The characterization of habeas corpus proceedings as "civil" is gross and inexact, the proceeding being essentially unique.

**Habeas Corpus § 109; Rules of Court § 3 - Federal Rules of Civil Procedure - applicability to particular proceedings**

9. Rule 81(a)(2) of the Federal Rules of Civil Procedure, relating to the applicability of those rules to particular proceedings, provides for the continuing applicability of the "civil" rules to those areas of practice in habeas corpus and other enumerated proceedings in which the modes of civil practice were previously used; otherwise, those proceedings are outside of the scope of the rules, without prejudice to the use of particular rules by analogy or otherwise, where appropriate.<*pg. 284>

**Habeas Corpus § 118; Rules of Court § 3 - Federal Rules of Civil Procedure - applicability of discovery provisions**

10. The restricted scope of 28 USC § 2246, enacted in 1948 and expressly referring to the right of parties in habeas corpus proceedings to propound written interrogatories, indicates that the adoption in 1938 of the Federal Rules of Civil Procedure was not intended to make available in habeas corpus proceedings the discovery provisions of those rules.

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Habeas Corpus § 118; Rules of Court § 3 - Federal Rules of Civil Procedure - construction - interrogatories to parties**

11. The United States Supreme Court has no power to rewrite the Federal Rules of Civil Procedure by judicial interpretations or to decide that Rule 33, relating to interrogatories to parties, applies to habeas corpus proceedings unless, on conventional principles of statutory construction, the court can properly conclude that the literal language or the intended effect of the Rules indicates that this was within the purpose of the draftsmen or the congressional understanding.

**Habeas Corpus § 109 - fashioning appropriate modes of procedure**

12. The All Writs Statute (28 USC § 1651) extends to habeas corpus proceedings and authorizes the courts to fashion appropriate modes of procedure by analogy to existing rules or otherwise in conformity with judicial usage; where their duties require it, this is the inescapable obligation of the courts.

**Courts § 505 - issuing appropriate orders - factual inquiries**

13. The courts may rely upon the All Writs Statute (28 USC § 1651) in issuing orders appropriate to assist them in conducting factual inquiries.

**Habeas Corpus § 118 - issuing writs - development of facts**

14. At any time in a habeas corpus proceeding, when the court considers it necessary to do so in order that a fair and meaningful evidentiary hearing may be held so that the court may properly dispose of the matter as law and justice require, either on its own motion or upon cause shown by the petitioner, it may issue such writs and take or authorize such proceedings with respect to development of the facts relevant to the claims advanced by the parties as may be necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law.

## APPEARANCES OF COUNSEL ARGUING CASE

*J. Stanley Pottinger* argued the cause for petitioner.

*Derald E. Granberg* argued the cause for respondent.

*Jerome Feit* argued the cause for the United States, amicus curiae, by special leave of Court.

Briefs of Counsel, p.864, infra.

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# OPINION

[394 US 288]

Mr. Justice *Fortas* delivered the opinion of the Court.

This case presents the question whether state prisoners who have commenced habeas corpus proceedings in a federal district court may, in proper circumstances, utilize the instrument of interrogatories for discovery purposes.

## I.

Petitioner is the Chief Judge of the United States District Court for the Northern District of California. Respondent is the warden of the California State Prison at San Quentin. The proceeding was initiated by Alfred Walker who had been convicted in the California <*pg. 285> courts of the crime of possession of marihuana. After exhausting

[394 US 289]

state remedies, he filed a petition for habeas corpus in the Federal District Court, alleging that evidence seized in the search incvident to his arrest was improperly admitted at his trial. The basis for this claim was his allegation that the arrest and incidental search were based solely on the statement of an informant who, according to Walker's sworn statement, was not shown to have been reliable; who, in fact, was unreliable; and whose statements were accepted by the police without proper precautionary procedures.

The District Court issued an order to show cause and respondent made return. Thereafter, Walker filed a motion for an evidentiary hearing, which the District Court granted. Two months later, Walker served upon the respondent warden a series of interrogatories, pursuant to Rule 33 of the Federal Rules of Civil Procedure, seeking discovery of certain facts directed to proof of the informant's unreliability. Respondent filed objections to the interrogatories, alleging the absence of authority for their issuance. The District Judge, without stating his reasons, disallowed the objections and directed that the interrogatories be answered. Respondent applied to the Court of Appeals for the Ninth Circuit for a writ of mandamus or prohibition. The Ninth Circuit vacated the order of the District Court. It held that the discovery provisions of the Federal Rules of Civil

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Procedure were not applicable to habeas corpus proceedings and that 28 USC § 2246, the statutory provision specifically relating to the use of interrogatories in habeas corpus proceedings, did not authorize their use for discovery. Wilson v Harris, 378 F.2d 141 (1967).

[1][2][3]  Because of the importance of the questions presented and the diversity of views among the district and appellate courts that have considered the problem,[1]  we granted

[394 US 290]

certiorari. 392 US 925, 20 L Ed 2d 1384, 88 S Ct 2289. We agree with the Ninth Circuit that Rule 33 of the Federal Rules of Civil Procedure is not applicable to habeas corpus proceedings and that 28 USC § 2246 does not authorize interrogatories except in limited circumstances not applicable to this case; but we conclude that, in appropriate circumstances, a district court, confronted by a petition for habeas corpus which establishes a prima facie case for relief, may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary <*pg. 286> to help the court to "dispose of the matter as law and justice require." 28 USC § 2243. Accordingly, we reverse and remand the case in order that the District Court may reconsider the matter before it in light of our opinion and judgment.

## II.

[4][5]  The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary

[394 US 291]

and lawless state action. Its pre-eminent role is recognized by the admonition in the Constitution that: "The Privilege of the Writ of Habeas Corpus shall not be suspended ...." US Const, Art I, § 9, cl 2. The scope and flexibility of the writ-its capacity to reach all manner of illegal detention-its ability to cut through barriers of form and procedural mazes-have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

As Blackstone phrased it, habeas corpus is "the great and efficacious writ, in all manner of illegal confinement."[2]  As this Court said in Fay v Noia, 372 US 391, 401-402, 9 L Ed 2d 837, 846, 83 S Ct 822 (1963), the office of the writ is "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." See Peyton v Rowe, 391 US 54, 65-67, 20 L Ed 2d 426, 433-434, 88 S Ct 1549 (1968).

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[6]  It is now established beyond the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings to applicants, but must do so upon an appropriate showing. Townsend v Sain, 372 US 293, 313, 9 L Ed 2d 770, 785, 83 S Ct 745 (1963); Brown v Allen, 344 US 443, 464, n. 19, 97 L Ed 469, 492, 73 S Ct 397 (1953). And this Court has emphasized, taking into account the office of the writ and the fact that the petitioner, being in custody, is usually handicapped in developing the evidence needed to support in necessary detail the facts alleged in his petition, that a habeas

[394 US 292]

corpus proceeding must not be allowed to founder in a "procedural morass." Price v Johnston, 334 US 266, 269, 92 L Ed 1356, 1361, 68 S Ct 1049 (1948).

[7]  There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law. This Court has insistently said that the power of the federal courts to conduct inquiry in habeas corpus is equal to the responsibility which the writ involves: "The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary." Townsend v Sain, supra, at 312, 9 L Ed 2d at 785.

In the present case, we are confronted <*pg. 287> with a procedural problem which tests the reality of these great principles. We are asked by Walker to establish the existence of rights for those in custody to discover facts which may aid their petitions for release. We are asked to do this by declaring that the provisions of the Federal Rules of Civil Procedure granting such rights to litigants in civil causes are available to Walker; or if we refuse so to conclude, to affirm the existence of power in the District Court to authorize discovery by written interrogatories. We address ourselves to those issues.

### III.

Rule 1 of the Federal Rules of Civil Procedure provides that:  "These rules govern the procedure in the United States district courts in all suits of a civil nature ... with the exceptions stated in Rule 81."  At the time of the decision below Rule 81(a)(2) provided, in relevant part, that the Rules were not applicable in habeas corpus "except to the extent that the practice in

[394 US 293]

such proceedings is not set forth in statutes of the United States and has heretofore

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

conformed to the practice in actions at law or suits in equity."[3]

The Court of Appeals for the Ninth Circuit held that the second requirement-"conformity" with practice-made it necessary to show that "prior to September 16, 1938, discovery was actually being used in habeas proceedings, and that such use conformed to the then discovery practice in actions at law or suits in equity." 378 F.2d, at 144. No such showing was made and it is not here contended that it can be made. Walker contends, however, that the rule requires only a showing that habeas proceedings conformed generally to pre-existing practice in law and equity, and he contends that this general requirement is met.

[1] We need not consider this contention that the Court of Appeals took an unnecessarily restricted view of the thrust of the "conformity" requirement, because for other reasons we conclude that the intended scope of the Federal Rules of Civil Procedure and the history of habeas corpus procedure, make it clear that Rule 81(a)(2) must be read to exclude the application of Rule 33 in habeas corpus proceedings.

[8][9] It is, of course, true that habeas corpus proceedings are characterized as "civil." See e.g., Fisher v Baker, 203 US 174, 181, 51 L Ed 142, 143, 27 S Ct 135 (1906). But the label is gross and

[394 US 294]

inexact.[4] Essentially, the proceeding is unique. Habeas corpus practice in the federal courts has conformed with civil practice only in a general sense. There is no indication that with respect <*pg. 288> to pretrial proceedings for the development of evidence, habeas corpus practice had conformed to the practice at law or in equity "to the extent" that the application of rules newly developed in 1938 to govern discovery in "civil" cases should apply in order to avoid a divergence in practice which had theretofore been substantially uniform. Although there is little direct evidence, relevant to the present problem, of the purpose of the "conformity" provision of Rule 81(a)(2), the concern of the draftsmen, as a general matter, seems to have been to provide for the continuing applicability of the "civil" rules in their new form to those areas of practice in habeas corpus and other enumerated proceedings in which the "specified" proceedings had theretofore utilized the modes of civil practice. Otherwise, those proceedings were to be considered outside of the scope of the rules without prejudice, of course, to the use of particular rules by analogy or otherwise, where appropriate.[5]

[394 US 295]

Such specific evidence as there is with respect to the intent of the draftsman of the rules

LED2                                                    9

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

indicates nothing more than a general and nonspecific understanding that the rules would have very limited application to habeas corpus proceedings. At the very least, it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions which, even in ordinary civil litigation, were "one of the most significant innovations" of the new rules. Hickman v Taylor, 329 US 495, 500, 91 L Ed 451, 457, 67 S Ct 385 (1947). Walker does not claim that there was any general discovery practice in habeas corpus proceedings prior to adoption of the Federal Rules of Civil Procedure.

In considering the intended application of the new rules to habeas corpus, it is illuminating to note that in 1938 the expansion of federal habeas corpus to its present scope was only in its early stages. Mooney v Holohan, 294 US 103, 79 L Ed 791, 55 S Ct 340, 98 ALR 406 (1935); Johnson v Zerbst, 304 US 458, 82 L Ed 1461, 58 S Ct 1019, 146 ALR 357 (1938); Waley v Johnston, 316 US 101, 86 L Ed 1302, 62 S Ct 964 (1942). It was not until many years later that the federal courts considering a habeas corpus petition were held to be required in many cases to make an independent determination of the factual basis of claims that state convictions had violated the petitioner's federal constitutional rights. Brown v Allen, 344 US 443, 97 L Ed 469, 73 S Ct 397 (1953); Townsend v Sain, 372 US 293, 9 L Ed 2d 770, 83 S Ct 745 (1963). In these circumstances it is <*pg. 289> readily understandable that, as indicated by the language and the scanty contemporary exegesis of Rule 81(a)(2) which is available, the draftsmen

[394 US 296]

of the rule did not contemplate that the discovery provisions of the rules would be applicable to habeas corpus proceedings.

[2][10]  It is also of some relevance that in 1948, when Congress enacted 28 USC § 2246 expressly referring to the right of parties in habeas corpus proceedings to propound written interrogatories, its legislation was limited to interrogatories for the purpose of obtaining evidence from affiants where affidavits were admitted in evidence. Again, the restricted scope of this legislation indicates that the adoption in 1938 of the Federal Rules of Civil Procedure was not intended to make available in habeas corpus proceedings the discovery provisions of those rules.

Indeed, it is difficult to believe that the draftsmen of the Rules or Congress would have applied the discovery rules without modification to habeas corpus proceedings because their specific provisions are ill-suited to the special problems and character of such proceedings. For example, Rule 33, which Walker here invoked, provides for written interrogatories to be served by any party upon any "adverse party." As the present case illustrates, this would usually mean that the prisoner's interrogatories must be directed to the warden although the warden would be unable to answer from personal knowledge questions relating to petitioner's arrest and trial. Presumably the warden could solicit answers from the appropriate officials and reply "under oath"

LED2                                    10

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

as the rule requires; but the warden is clearly not the kind of "adversary party" contemplated by the discovery rules, and the result of their literal application would be to invoke a procedure which is circuitous, burdensome, and time consuming.

The scope of interrogatories which may be served under Rule 33 also indicates the unsuitability of applying to habeas corpus provisions which were drafted without reference to its peculiar problems.

[394 US 297]

By reference to Rule 26(b), the rule would give the prisoner a right to inquire into "any matter, not privileged, which is relevant to the subject matter involved in the pending action," whether admissible at trial or not. This rule has been generously construed to provide a great deal of latitude for discovery. See Hickman v Taylor, supra, at 507, 91 L Ed at 460; 2A Barron & Holtzoff, supra, § 646. Such a broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding.

Except for interrogatories to be served by the "plaintiff" within 10 days after the commencement of "the action," Rule 33 provides that the interrogatories may be served without leave of court. The "adverse party" must then take the initiative to contest the interrogatories and a hearing in court on his objections is required. Unavoidably, unless there is a measure of responsibility in the originator of the proceeding, the "plaintiff" or petitioner, this procedure can be exceedingly burdensome and vexatious. The interrogatory procedure would be available to the prisoners themselves since most habeas petitions are prepared and filed by prisoners, generally without the guidance or <*pg. 290> restraint of members of the bar. For this reason, too, we conclude that the literal application of Rule 33 to habeas corpus proceedings would do violence to the efficient and effective administration of the Great Writ. The burden upon courts, prison officials, prosecutors, and police, which is necessarily and properly incident to the processing and adjudication of habeas corpus proceedings, would be vastly increased; and the benefit to prisoners would be counterbalanced by the delay which the elaborate discovery procedures would necessarily entail.

[11] It is true that the availability of Rule 33 would provide prisoners with an instrument of discovery which could be activated on their own initiative, without prior

[394 US 298]

court approval, and that this would be of considerable tactical advantage to them in the prosecution of their efforts to demonstrate such error in their trial as would result in their release.

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

.

But despite the forceful and ingenious argument of Walker's counsel and amici curiae,[6] this consideration cannot carry the day. It is a long march from this contention to a conclusion that the discovery provisions of the Federal Rules of Civil Procedure were intended to extend to habeas corpus proceedings. We have no power to rewrite the Rules by judicial interpretations. We have no power to decide that Rule 33 applies to habeas corpus proceedings unless, on conventional principles of statutory construction, we can properly conclude that the literal language or the intended effect of the Rules indicates that this was within the purpose of the draftsmen or the congressional understanding.

## IV.

[7]  To conclude that the Federal Rules' discovery provisions do not apply completely and automatically by virtue of Rule 81(a)(2) is not to say that there is no way in which a district court may, in an appropriate case, arrange for procedures which will allow development, for purposes of the hearing, of the facts relevant to disposition of a habeas corpus petition. Petitioners in habeas corpus proceedings, as the Congress and this Court have emphasized, and as we have discussed, supra, at 290-292, 22 L Ed 2d at 285, 286, 287, are entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts. Congress has provided that once a petition for a writ of habeas corpus is filed, unless

[394 US 299]

the court is of the opinion that the petitioner is not entitled to an order to show cause, the writ must be awarded "forthwith," or an order to show cause must be issued. 28 USC § 2243. Thereafter, if the court concludes that the petitioner is entitled to an evidentiary hearing, cf. Townsend v Sain, supra; 28 USC § 2254, it shall order one to be held promptly. 28 USC § 2243.

[12][13]  Flexible provision is made for taking evidence by oral testimony, by deposition, or upon affidavit and written interrogatory. 28 USC § 2246. Cf. §§ 2245, 2254 (e). The court shall "summarily hear and determine the facts, and dispose of the matter as law and justice<*pg. 291> require." 28 USC § 2243. But with respect to methods for securing facts where necessary to accomplish the objective of the proceedings Congress has been largely silent. Clearly, in these circumstances, the habeas corpus jurisdiction and the duty to exercise it being present, the courts may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts. Their authority is expressly confirmed in the All Writs Act, 28 USC § 1651. This statute has served since its inclusion, in substance, in the original Judiciary Act as a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.' " Price v Johnston, 334 US 266, 282, 92 L Ed 1356, 1368, 68 S Ct 1049 (1948), quoting Adams v

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

United States ex rel. McCann, 317 US 269, 273, 87 L Ed 268, 271, 63 S Ct 236, 143 ALR 435 (1942).  It has been recognized that the courts may rely upon this statute in issuing orders appropriate to assist them in conducting factual inquiries.  American Lithographic Co. v Werckmeister, 221 US 603, 609, 55 L Ed 873, 877, 31 S Ct 676 (1911) (subpoenas duces tecum); Bethlehem Shipbuilding Corp. v NLRB, 120 F.2d 126, 127 (CA1st Cir 1941) (order that certain documents be produced for the purpose of pretrial discovery).  In Price v Johnston, supra, this Court held

[394 US 300]

explicitly that the purpose and function of the All Writs Act to supply the courts with the instruments needed to perform their duty, as prescribed by the Congress and the Constitution, provided only that such instruments are "agreeable" to the usages and principles of law, extend to habeas corpus proceedings.

[14]  At any time in the proceedings, when the court considers that it is necessary to do so in order that a fair and meaningful evidentiary hearing may be held so that the court may properly "dispose of the matter as law and justice require," either on its own motion or upon cause shown by the petitioner, it may issue such writs and take or authorize such proceedings with respect to development, before or in conjunction with the hearing of the facts relevant to the claims advanced by the parties, as may be "necessary or appropriate in aid of [its jurisdiction] ... and agreeable to the usages and principles of law."  28 USC § 1651.

We do not assume that courts in the exercise of their discretion will pursue or authorize pursuit of all allegations presented to them.  We are aware that confinement sometimes induces fantasy which has its basis in the paranoia of prison rather than in fact.  But where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore, entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry. Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the "usages and principles of law."[7] <*pg. 292>

[394 US 301]


Accordingly, we reverse the judgment of the Court of Appeals for the Ninth Circuit and remand the case for further proceedings in accordance with this opinion.

Reversed and remanded.

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## SEPARATE OPINION

Mr. Justice *Black,* dissenting.

I would affirm the Court of Appeals' holding in this case, Wilson v Harris, 378 F.2d 141, that 28 USC § 2246 does not authorize discovery in habeas corpus proceedings. Upon affirmance I would not go further and write what appears to me to be in effect an advisory opinion directing the trial court to formulate some kind of new legal system for discovery in this kind of case. Fully agreeing with the Court's statement that "[w]e have no power to rewrite the Rules by judicial interpretations," I go further and doubt that we have power to

[394 US 302]

direct lower courts to write new laws providing for discovery in habeas corpus cases. This is a complicated field of law making and I think we should not enter this field in the absence of some valid delegation of legislative power by the Congress. Since I cannot agree that Congress has granted us such power, I am unable to go along with the Court's opinion.

There have been many complaints among members of the bar about many Court-made rules of procedure and I would venture the suggestion that in no field have the number of those complaints exceeded the complaints in this particular field of discovery. I regret that I cannot "assume," with the Court, that given blanket authority, "courts in the exercise of their discretion will [not] pursue or authorize pursuit of all allegations presented to them." This case makes me skeptical about such an assumption. Here Walker was convicted in a state court of having marihuana in his possession. After exhausting all state remedies he asked the federal courts to let him out of jail. He apparently did not allege his innocence, does not now do so, and this Court apparently does not now consider the question of guilt or innocence in this case. What he does allege is that the trial court made an error in admitting certain evidence against him. It is not alleged that the evidence was not relevant against him or that the verdict resting on that <*pg. 293> evidence was not a truthful, honest verdict. We must, therefore, assume that he was and is guilty of the crime of which he was convicted. See my dissent in Kaufman v United States, 394 US 231, 22 L Ed 2d 240, 89 S Ct 1068. What is relevant, however, and all that is alleged, is that the evidence used against him, presumably the marihuana, was found on his premises as the result of a search made after a statement by a person to a policeman, which statement the allegations now charge "was not shown to have been reliable" and which was

[394 US 303]

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

made by a person "who was in fact unreliable." It may be possible that a new trial over this issue can establish that the person telling the officer that marihuana could be found on Walker's premises was an "unreliable" person and that the statement he made was also "unreliable." But the fact remains that the marihuana was found where the unreliable person's unreliable statement told the officer it would be found. Consequently it appears to me that the present case against a defendant whose guilt has been proved to a jury beyond a reasonable doubt should not be taken as an appropriate one on which this Court lays the groundwork for a new and vast judicial legislative rule- making program.

Perhaps it might not be considered amiss mildly to suggest that in cases like this, where records contain no question at all about guilt, some convictions should at some time be treated as final and no longer subject to challenge, at least by collateral attack. Although I admit that Aguilar v Texas, 378 US 108, 12 L Ed 2d 723, 84 S Ct 1509 (1964), Spinelli v United States, 393 US 410, 21 L Ed 2d 637, 89 S Ct 584 (1969), and other recent cases go a long way, I had not previously thought that even these cases could support what the Court is doing in this case.

Mr. Justice *Harlan,* whom Mr. Justice *White* joins, dissenting.

I agree that neither Rule 33 of the Federal Rules of Civil Procedure nor any statute authorizes the interrogatories sought in this case. I further agree that district courts do have power to require discovery when essential to render a habeas corpus proceeding effective. But I would make it explicit that such power is narrow and should be exercised sparingly, and would not set the district courts "at large," as I fear today's opinion may be taken to do.

[394 US 304]

## I.

This case furnishes an apt illustration of the differences between my viewpoint and what seems to be that of the majority. As stated more fully in the Court's opinion, ante, at 288, 289, 22 L Ed 2d at 284, 285, Walker claimed that marihuana admitted at his trial was seized incident to an arrest which was based upon information supplied by an unreliable informant. After the District Court had ordered an evidentiary hearing, Walker directed to the respondent warden a series of interrogatories designed to establish the unreliability of the informant. The interrogatories asked whether the officer who arrested Walker had made previous arrests or searchers on the basis of information given by the same informant; if so, whether such arrests or searches resulted in

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

convictions; and whether the informant had ever supplied information which the officer considered unreliable.

It seems apparent that this discovery was not essential to an adequate <\*pg. 294> habeas proceeding. All of the information sought was known to the arresting officer. Walker knew the officer's identity; in fact, the officer had testified at the preliminary hearing and at trial on the very issue of the informant's reliability. Hence, there is no reason to believe that all of the information could not have been obtained by calling the officer as a witness at the habeas hearing. Although I realize that the parties have not directed their arguments to this precise question, I am satisfied that on the face of things Walker cannot possibly show that this discovery is essential to a fair proceeding. Accordingly, I would affirm outright the judgment of the Court of Appeals.[1]

[394 US 305]


## II.


The more troublesome aspect of the Court's opinion is its long-run implications. For it can be taken as suggesting that the best solution to the problem of discovery in habeas corpus proceedings is to permit each district court to devise "appropriate modes of procedure" on a case-by-case basis. As regards the immediate future, a case-by-case approach may be unavoidable, since there is at present no body of applicable discovery rules and the district courts must have power to order discovery which is essential to effective disposition of habeas applications. But I consider that from a broader standpoint the problem of habeas discovery should be dealt with not case by case but through exercise of our rule-making power. See 28 USC § 2072.

There are several reasons for believing that a case-by-case approach will be unsatisfactory in the long range. It seems to me that in fairness both to habeas petitioners and to their adversaries, the discovery procedures which are available in such actions should be uniform throughout the federal system and not dependent upon the varying

[394 US 306]

 "discovery attitudes" of particular district judges. If discovery procedures are developed case by case, there will at least be a very long period during which procedures will differ from district to district. Even assuming that a coherent body of rules finally will emerge because of the unifying influence of appellate decisions, it is unlikely that the rules thus generated will be the best that could have been devised. Appellate courts, including this one, are imperfectly informed both

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

about the extent of the need for additional discovery in habeas corpus and about the procedures best suited to meet those needs and to achieve prompt dispatch of habeas proceedings. <*pg. 295> They are, therefore, poorly situated to lay down guidelines for the district courts. Moreover, discovery rules fashioned in the course of day-to-day adjudication are likely to suffer from the limitations which accompany that process.

Such considerations lead me to think that, in the longer view, the formulation of discovery rules can best be accomplished through use of the power which Congress has conferred upon us to establish general rules governing civil procedure in the federal district courts. By using this method of rule making, the advice of the Judicial Conference of the United States and its appropriate advisory committees could be obtained.[2]   These bodies are well equipped to assess the dimensions of the discovery problem and devise apt solutions.  Their deliberations would be free from the time pressures and piecemeal character of case-by-case adjudication.  And the resulting rules would be uniform throughout the federal system.

[394 US 307]

My conviction that this would be the best course is strengthened by recollection of our decision in Miner v Atlass, 363 US 641, 4 L Ed 2d 1462, 80 S Ct 1300 (1960), and the events which followed.  In Miner we held that a District Court sitting in admiralty had no power to order the taking of an oral discovery deposition.  Responding to a suggestion in our opinion, see 363 US, at 651, 4 L Ed 2d at 1468, and to earlier stirrings at the bar, the Judicial Conference and the Advisory Committee on General Admiralty Rules swiftly proposed new Admiralty Rules authorizing certain additional kinds of discovery, including oral depositions.  After approval by this Court and submission to Congress, as required by statute,[3]  the new Admiralty Rules went into effect a little more than a year after our decision.[4]   There is no reason to think that the Judicial Conference and the advisory committees would not be equally cooperative in this instance.

For the reasons stated in Part I of this opinion, I would affirm the judgment of the Court of Appeals in this case.

Mr. Justice *Stewart,* dissenting.

I concur with most of what is said in the Court's opinion, but cannot concur in its judgment.

I wholly agree that Rule 33 is inapplicable to habeas corpus proceedings.  Contrary to my

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Brother Harlan, I further agree that federal judges in carrying out their duty to dispose of habeas corpus applications "as law and justice require," 28 USC § 2243, should not be inhibited by inflexibly formalized procedural rules. In getting at the facts in such cases, the district courts

[394 US 308]

should be given wide leeway for "discretion to exercise their common sense." Machibroda v United Statutes, 368 US 487, 495, 7 L Ed 2d 473, 479, 82 S Ct 510.† <*pg. 296>

However, for the reasons stated in Mr. Justice Harlan's dissenting opinion today in Kaufman v United States, ante, p. 242, 22 L Ed 2d p. 246, which I have joined, I would affirm the judgment in the present case.

## FOOTNOTES

[1] Some courts have joined the Ninth Circuit in holding the discovery provisions of the Federal Rules wholly inapplicable to habeas corpus proceedings. E. g., Sullivan v United States, 198 F Supp 624, 625-627 (DS SD NY 1961). On other occasions it has been held that the Rules apply only by "analogy." Wilson v Weigel, 387 F.2d 632, 634, n 3 (CA9th Cir 1967); cf. United States ex rel. Jelic v District Director of Immigration, 106 F.2d 14, 20 (CA2d Cir 1939) (opinion by Judge Clark, who served as Reporter of the Advisory Committee on the Federal Rules of Civil Procedure). Several courts have held the Rules applicable because habeas is characterized generally as a "civil" proceeding. E. g., United States ex rel. Seals v Wiman, 304 F.2d 53, 64 (CA5th Cir 1962); cf. Schiebelhut v United States, 318 F.2d 785, 786, (CA6th Cir 1963) (28 USC § 2255 action). Some courts have sustained the use of particular discovery rules under the Federal Rules of Civil Procedure as necessary to effectuate statutory policy with respect to habeas corpus. E. g., Knowles v Gladden, 254 F Supp 643, 644-645 (DC Ore 1965), aff'd, 378 F.2d 761 (CA9th Cir 1967), others have apparently assumed that the rules applied to habeas without discussion of the question. E. g., Fortner v Balkcom, 380 F.2d 816, 818 (5th Cir 1967).

[2] 3 W. Blackstone, Commentaries *1131 (Lewis ed. 1902). See generally Fay v Noia, 372 US 391, 399-415, 9 L Ed 2d 837, 845, 854, 83 S Ct 822 (1963). Cf. Frank v Mangum, 237 US 309, 346, 59 L Ed 969, 988, 35 S Ct 582 (Holmes, J., joined by Hughes, J., dissenting) (1915), "[H]abeas corpus cuts through all forms and goes to the very tissue of the structure. It comes in from the outside ... and although every form may have been preserved opens the inquiry whether they have been more than an empty shell."

[3] Rule 81 (a)(2) was amended, effective July 1, 1968, to read, "These rules are applicable to proceedings for ... habeas corpus ... to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." The amendment merely eliminated references to appellate procedure made inappropriate by the adoption of the Federal Rules of Appellate Procedure and does not affect the issue before us. See Report of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, 43 FRD 61, 164 (explanatory note to the proposed revision of Rule 81(a)(2)).

[4] The degree to which this characterization excessively simplifies a complex history is discussed in

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Cohen, Some Considerations on the Origins of Habeas Corpus, 16 Can B. Rev 92 (1938), and Cohen, Habeas Corpus Cum Causa-The Emergence of the Modern Writ, 18 Can. B. Rev 10, 172 (1940).  Cf. Sullivan v United States, 198 F Supp 624 (DC SD NY 1961).

[5] The federal courts have applied some noncontroversial rules in habeas corpus proceedings.  E. g., Rule 6(b)(2), extension of time for excusable neglect, Bowen v Boles, 258 F Supp 111 (DC ND W Va 1966); Rule 15 (b), determination of issue not raised by pleadings, Hamilton v Hunter, 65 F Supp 319 (DC Kan 1946).  See also 1 W. Barron & A. Holtzoff, Federal Practice and Procedure § 131 (C. Wright ed. 1960); Note, Civil Discovery in Habeas Corpus, 67 Col L Rev 1296, 1299 (1967).  The applicability to habeas corpus of the rules concerning joinder and class actions has engendered considerable debate.  See Mitchell v Schoonfield, 285 F Supp 728 (DC Md 1968); Hill v Nelson, 272 F Supp 790 (DC ND Calif 1967); Adderly v Wainwright, 272 F Supp 530 (DC MD Fla 1967).  Cf. Note, Multiparty Federal Habeas Corpus, 81 Harv L Rev 1482 (1968).  The only issue before the Court in this case is the applicability to habeas corpus proceedings of those rules which deal with discovery.  We intimate no view on whether the Federal Rules may be applicable with respect to other aspects of a habeas corpus proceeding.

[6] In our consideration of this case, we have been assisted greatly by the briefs of the amici curiae-the NAACP Legal Defense and Educational Fund and the National Office for the Rights of the Indigent in support of petitioner, and the United States and the State of New York in support of respondent.

[7] Mr. Justice Harlan, dissenting, agrees that district courts have power to require discovery when essential to render a habeas corpus proceeding effective.  He dissents because he would substitute the judgment of this remote Court for that of the District Court as to the need for authorizing discovery in this case.  Mr. Justice Harlan then expresses in his views as to the desirability of formulating discovery rules under 28 USC § 2072, applicable to federal habeas and § 2255 proceedings.  In our view, the desirability of launching rule-making proceedings does not and could not affect the decision in the present case.

In view of his remarks, however, we have concluded that we should express agreement with our Brother Harlan as to the desirability of rule making in this field.  We repeat that it does not follow from this that district judges are without power to enter necessary orders in the absence of rules.

In fact, it is our view that the rule-making machinery should be invoked to formulate rules of practice with respect to federal habeas corpus and § 2255 proceedings, on a comprehensive basis and not merely one confined to discovery.  The problems presented by these proceedings are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, and reliance upon usage and the opaque language of Civil Rule 81(a)(2) is transparently inadequate.  In our view the results of a meticulous formulation and adoption of special rules for federal habeas corpus and § 2255 proceedings would promise much benefit.

[1] My Brother Stewart bases his dissent in this case upon my own dissenting opinion in Kaufman v United States, ante, at p. 242, 22 L Ed 2d at p. 246, in which I have taken the position that in actions brought by federal prisoners under 28 USC § 2255 Fourth Amendment claims should be entertained only upon a showing of "special circumstances."  I prefer to rest my disagreement with the result in this case upon other grounds, for two reasons.  First, this case is not on all fours with Kaufman, since this was a federal habeas action by a state prisoner rather than an action by a federal prisoner under § 2255.  The Kaufman question has not been briefed or argued in this case, and there may conceivably be significant distinctions between the two types of proceedings.  See, e. g., Amsterdam, Search, Seizure, and Section

LED2                                19

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2255: A Comment, 112 U Pa L Rev 378 (1964).  Second, although this case happens, like Kaufman, to involve a search-and- seizure issue, the Court's reasoning here plainly applies to all claims cognizable on federal habeas corpus.  Hence, it seems appropriate to rest my dissent upon broader grounds, which also appeal to my Brother White.

[2] For a brief account of the role played by these bodies in the making of civil rules, see Kaplan, Continuing Work of the Civil Committee:  1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv L Rev 356, 357-358 (1967).

[3] See 28 USC § 2072, which also specifies that the proposed rules shall not take effect for 90 days after they have been reported to Congress.

[4] See Admiralty Rules 30A-30G, 32, 32B-32D, which were either added or amended effective July 19, 1961.

† The Machibroda case arose under 28 USC § 2255, the statutory counterpart of habeas corpus.  In the circumstances there presented, we pointed out that "many of the material allegations can either be corroborated or disproved by the visitors' records of the county jail where the petitioner was confined, the mail records of the penitentiary to which he was sent, and other such sources."  368 US, at 495, 7 L Ed 2d at 479.

LED2                                   20

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

| 83 SCT 1194, 10 LED2D 215, 373 US 83  BRADY v MARYLAND |
| --- |

### JOHN L. BRADY, Petitioner,
*vs.*
### STATE OF MARYLAND

## 373 US 83, 10 L Ed 2d 215, 83 SCT 1194

[No. 490]

**Argued March 18 and 19, 1963.**

**Decided May 13, 1963.**

### SUMMARY

After the petitioner had been convicted in a Maryland state court on a charge of murder in the first degree (committed in the course of a robbery) and had been sentenced to death, he learned of an extrajudicial confession of his accomplice, tried separately, admitting the actual homicide. This confession had been suppressed by the prosecution notwithstanding a request by the petitioner's counsel to allow him to examine the accomplice's extrajudicial statements. Upon appeal from the trial court's dismissal of his petition for postconviction relief, the Maryland Court of Appeals held that suppression of the evidence by the prosecution denied petitioner due process of law, and remanded the case for a retrial of the question of punishment only. (226 Md 422, 174 A2d 167.)

On certiorari, the United States Supreme Court affirmed. In an opinion by Douglas, J., expressing the views of six members of the Court, it was held that (1) the prosecution's suppression of the accomplice's confession violated the due process clause of the Fourteenth Amendment, but (2) neither that clause nor the equal protection clause of that amendment was violated by restricting the new trial to the question of punishment.

White, J., concurred in a separate opinion, expressing the view that the Court should not have reached the due process question which it decided. He concurred in the Court's disposition of petitioner's equal protection argument.

LED2                                    1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



Harlan, J., joined by Black, J., dissented, expressing the view that because of uncertainty in the pertinent Maryland law and because the Maryland Court of Appeals did not in terms address itself to the equal protection question, the judgment below should have been vacated and the case remanded to the Court of Appeals for further consideration.

## ANNOTATION REFERENCES

1. Suppression of evidence by prosecution in criminal case as vitiating conviction. 33 ALR2d 1421.

2. Conviction on testimony known to prosecution to be perjured as denial of due process. 2 L ed 2d 1575, 3 L ed 2d 1991.

3. Obtaining conviction on perjured testimony known to prosecuting authorities to be perjured, as denial of due process. 98 ALR 411.

HEADNOTES

### Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Appeal and Error § 95 - finality of state court judgment.**

1. A decision of the highest court of a state in which the trial court's dismissal of a prisoner's petition for postconviction relief was reversed on the ground that suppression of the evidence by the prosecution denied <*pg. 216> petitioner due process of law, and by which the case was remanded for a retrial of the question of punishment, not the question of guilt, is a "final judgment" within the meaning of 28 USC § 1257(3), under which the United States Supreme Court may review a judgment of a state court only if it is final.

**Constitutional Law § 840.5 - due process - prosecution's suppression of accomplice's confession.**

2. The due process clause of the Fourteenth Amendment is violated by the prosecution's suppression-before and at the accused's state trial on a charge of murder committed in the course of robbery and after defense counsel's request to allow him examination of the extrajudicial statements of his accomplice-of a statement of the accomplice admitting that the latter committed the actual homicide.

**Constitutional Law § 840 - due process - prosecution's suppression of evidence.**

3. The suppression by the prosecution of evidence favorable to and requested by an accused

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

**Trial § 45 - relative functions of court and jury - admissibility of evidence.**

4. Notwithstanding the provision in the Maryland Constitution that the jury in a criminal case are the judges of law, as well as of fact, under Maryland law it is the court and not the jury that passes on the admissibility of evidence pertinent to the issue of innocence or guilt of the accused.

**Criminal Law § 74 - postconviction proceedings - construction of state court judgment.**

5. A statement in a state court judgment reversing the trial court's dismissal of a prisoner's petition for postconviction relief and remanding the case for a retrial of the question of punishment, that nothing in an accomplice's confession suppressed by the prosecution could have reduced the accused's offense below murder in the first degree, is a ruling on the admissibility of the confession on the issue of innocence or guilt.

**Constitutional Law § 500, 840.5 - prosecution's suppression of accomplice's confession - restricting new trial to question of punishment.**

6. Neither the due process clause nor the equal protection clause of the Fourteenth Amendment is violated by a state court's restricting to the question of punishment a new trial granted an accused because of the prosecution's suppression of an accomplice's confession, where the state court ruled that nothing in the suppressed confession could have reduced the accused's offense below murder in the first degree, thereby ruling on the admissibility of the confession on the issue of innocence or guilt, and under the law of the state this issue was for the court, not the jury, to determine.

### APPEARANCES OF COUNSEL ARGUING CASE

*E. Clinton Bamberger, Jr.,* argued the cause for petitioner.

*Thomas W. Jamison III* argued the cause for respondent.

Briefs of Counsel, p.1128, infra.<*pg. 217>

### OPINION

[373 US 84]

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Opinion of the Court by Mr. Justice *Douglas,* announced by Mr. Justice *Brennan.*

Petitioner and a companion, Boblit, were found guilty of murder in the first degree and were sentenced to death, their convictions being affirmed by the Court of Appeals of Maryland.  220 Md 454, 154 A2d 434.  Their trials were separate, petitioner being tried first.  At his trial Brady took the stand and admitted his participation in the crime, but he claimed that Boblit did the actual killing.  And, in his summation to the jury, Brady's counsel conceded that Brady was guilty of murder in the first degree, asking only that the jury return that verdict "without capital punishment."  Prior to the trial petitioner's counsel had requested the prosecution to allow him to examine Boblit's extra judicial statements.  Several of those statements were shown to him; but one dated July 9, 1958, in which Boblit admitted the actual homicide, was withheld by the prosecution and did not come to petitioner's notice until after he had been tried, convicted, and sentenced, and after his conviction had been affirmed.

Petitioner moved the trial court for a new trial based on the newly discovered evidence that had been suppressed by the prosecution.  Petitioner's appeal from a denial of that motion was dismissed by the Court of Appeals without prejudice to relief under the Maryland

[373 US 85]

 Post Conviction Procedure Act.  222 Md 442, 160 A2d 912.  The petition for post-conviction relief was dismissed by the trial court; and on appeal the Court of Appeals held that suppression of the evidence by the prosecution denied petitioner due process of law and remanded the case for a retrial of the question of punishment, not the question of guilt.  226 Md 422, 174 A2d 167.  The case is here on certiorari, 371 US 812, 9 L ed 2d 54, 83 S Ct 56.[1]

The crime in question was murder committed in the perpetration of a robbery.  Punishment for that crime in Maryland is life imprisonment or death, the jury being empowered to restrict the punishment to life by addition of the words "without capital punishment."  3 Md Ann Code, 1957, Art 27, § 413.  In Maryland, by reason of the state constitution, the jury in a criminal case are "the Judges of Law, as well as of fact."  Art 15, § 5.  The question presented is whether petitioner was denied a <\*pg. 218> federal right when the Court of Appeals restricted the new trial to the question of punishment.

[373 US 86]

[2]  We agree with the Court of Appeals that suppression of this confession was a violation of

LED2                                    4

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the Due Process Clause of the Fourteenth Amendment.  The Court of Appeals relied in the main on two decisions from the Third Circuit Court of Appeals-United States ex rel. Almeida v Baldi (Pa) 195 F.2d 815, 33 ALR2d 1407, and United States ex rel. Thompson v Dye (Pa) 221 F.2d 763-which, we agree, state the correct constitutional rule.

This ruling is an extension of Mooney v Holohan, 294 US 103, 112, 79 L ed 791, 794, 55 S Ct 340, 98 ALR 406, where the Court ruled on what nondisclosure by a prosecutor violates due process:

"It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.  Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation."

In Pyle v Kansas, 317 US 213, 215, 216, 87 L ed 214, 216, 63 S Ct 177, we phrased the rule in broader terms:

"Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him.  These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody. Mooney v Holohan, 294 U. S. 103."

[373 US 87]

The Third Circuit in the Baldi Case construed that statement in Pyle v Kansas to mean that the "suppression of evidence favorable" to the accused was itself sufficient to amount to a denial of due process.  195 F.2d at 820.  In Napue v Illinois, 360 US 264, 269, 3 L ed 2d 1217, 1221, 79 S Ct 1173, we extended the test formulated in Mooney v Holohan when we said:  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  And see Alcorta v Texas, 355 US 28, 2 L ed 2d 9, 78 S Ct 103; Wilde v Wyoming, 362 US 607, 4 L ed 2d 985, 80 S Ct 900.  Cf. Durley v Mayo, 351 US 277, 285, 100 L ed 1178, 1185, 76 S Ct 806 (dissenting opinion).

[3]  We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



irrespective of the good faith or bad faith of the prosecution.

The principle of Mooney v Holohan is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins <*pg. 219> its point whenever justice is done its citizens in the courts."[2] A prosecution that withholds evidence on demand of an accused which, if made available,

[373 US 88]

would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of guile," to use the words of the Court of Appeals. 226 Md, at 427.

The question remains whether petitioner was denied a constitutional right when the Court of Appeals restricted his new trial to the question of punishment. In justification of that ruling the Court of Appeals stated:

"There is considerable doubt as to how much good Boblit's undisclosed confession would have done Brady if it had been before the jury. It clearly implicated Brady as being the one who wanted to strangle the victim, Brooks. Boblit, according to this statement, also favored killing him, but he wanted to do it by shooting. We cannot put ourselves in the place of the jury and assume what their views would have been as to whether it did or did not matter whether it was Brady's hands or Boblit's hands that twisted the shirt about the victim's neck. ... [I]t would be 'too dogmatic' for us to say that the jury would not have attached any significance to this evidence in considering the punishment of the defendant Brady.

"Not without some doubt, we conclude that the withholding of this particular confession of Boblit's was prejudicial to the defendant Brady. ...

"The appellant's sole claim of prejudice goes to the punishment imposed. If Boblit's withheld confession had been before the jury, nothing in it could have reduced the appellant Brady's offense below murder in the first degree. We, therefore, see no occasion to retry that issue." 226 Md 429, 430. (Italics added.)

[373 US 89]

LED2                                          6

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

If this were a jurisdiction where the jury was not the judge of the law, a different question would be presented. But since it is, how can the Maryland Court of Appeals state that nothing in the suppressed confession could have reduced petitioner's offense "below murder in the first degree"? If, as a matter of Maryland law, juries in criminal cases could determine the admissibility of such evidence on the issue of innocence or guilt, the question would seem to be foreclosed.

But Maryland's constitutional provision making the jury in criminal cases "the Judges of Law" does not mean precisely what it seems to say.[3] The present status of that provision was reviewed recently in Giles v State, 229 Md 370, 183 A2d 359, app dismd 372 US 767, 10 L ed 2d 137, 83 S Ct 1102, where the several<*pg. 220> exceptions, added by statute or carved out by judicial construction, are reviewed. One of those exceptions, material here, is that "Trial courts have always passed and still pass upon the admissibility of evidence the jury may consider on the issue of the innocence or guilt of the accused." Id. 229 Md p 383. The cases cited make up a long line going back nearly a century. Wheeler v State, 42 Md 563, 570, stated that instructions to the jury were advisory only, "except in regard to questions as to what shall be considered as evidence." And the court "having such right, it follows of course, that it also has the right to prevent counsel from arguing against such an instruction." Bell v State, 57 Md 108, 120. And see Beard v State, 71 Md 275, 280, 17 A 1044, 4 LRA 675; Dick v State, 107 Md 11, 21, 68 A 286, 290. Cf. Vogel v State, 163 Md 267, 162 A 705.

[373 US 90]

[4][5][6] We usually walk on treacherous ground when we explore state law,[4] for state courts, state agencies, and state legislatures are its final expositors under our federal regime. But, as we read the Maryland decisions, it is the court, not the jury, that passes on the "admissibility of evidence" pertinent to "the issue of the innocence or guilt of the accused." Giles v State, 229 Md 370, 183 A2d 359, supra. In the present case a unanimous Court of Appeals has said that nothing in the suppressed confession "could have reduced the appellant Brady's offense below murder in the first degree." We read that statement as a ruling on the admissibility of the confession on the issue of innocence or guilt. A sporting theory of justice might assume that if the suppressed confession had been used at the first trial, the judge's ruling that it was not admissible on the issue of innocence or guilt might have been flouted by the jury just as it might have been done if the court had first admitted a confession and then stricken it from the record.[5] But we cannot raise that trial strategy to the dignity of a constitutional right and say that the deprivation of this defendant of that sporting chance through the use of a

[373 US 91]

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

bifurcated trial (cf. Williams v New York, 337 US 241, 93 L ed 1337, 64 S Ct 1079) denies him due process or violates the Equal Protection Clause of the Fourteenth Amendment.

Affirmed.

## SEPARATE OPINION

Separate opinion of Mr. Justice *White*.

1. The Maryland Court of Appeals declared, "The suppression or withholding<*pg. 221> by the State of material evidence exculpatory to an accused is a violation of due process" without citing the United States Constitution or the Maryland Constitution which also has a due process clause.† We therefore cannot be sure which Constitution was invoked by the court below and thus whether the State, the only party aggrieved by this portion of the judgment, could even bring the issue here if it desired to do so. See New York City v Central Sav. Bank, 306 US 661, 83 L ed 1058, 59 S Ct 590; Minnesota v National Tea Co. 309 US 551, 84 L ed 920, 60 S Ct 676. But in any event, there is no cross- petition by the State, nor has it challenged the correctness of the ruling below that a new trial on punishment was called for by the requirements of due process. In my view, therefore, the Court should not reach the due process question which it decides. It certainly is not the case, as it may be suggested, that without it we would have only a state law question, for assuming the court below was correct in finding a violation of petitioner's rights in the suppression of evidence, the federal question he wants decided here still remains, namely, whether denying him a new trial on guilt as well as punishment deprives him of equal protection. There is thus a federal question to deal with in this Court, cf. Bell v Hood, 327 US 678, 90 L ed 939, 66 S Ct 773, 13 ALR2d 383,

[373 US 92]

wholly aside from the due process question involving the suppression of evidence. The majority opinion makes this unmistakably clear. Before dealing with the due process issue it says, "The question presented is whether petitioner was denied a federal right when the Court of Appeals restricted the new trial to the question of punishment." After discussing at some length and disposing of the suppression matter in federal constitutional terms it says the question still to be decided is the same as it was before: "The question remains whether petitioner was denied a constitutional right when the Court of Appeals restricted his new trial to the question of punishment."

The result, of course, is that the due process discussion by the Court is wholly advisory.

LED2                                                    8

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



2. In any event the Court's due process advice goes substantially beyond the holding below. I would employ more confining language and would not cast in constitutional form a broad rule of criminal discovery. Instead, I would leave this task, at least for now, to the rulemaking or legislative process after full consideration by legislators, bench, and bar.

3. I concur in the Court's disposition of petitioner's equal protection argument.

Mr. Justice *Harlan,* whom Mr. Justice *Black* joins, dissenting.

I think this case presents only a single federal question: did the order of the Maryland Court of Appeals granting a new trial, limited to the issue of punishment, violate petitioner's Fourteenth Amendment right to equal protection?[1]    In my opinion an affirmative answer would <*pg. 222>

[373 US 93]

be required if the Boblit statement would have been admissible on the issue of guilt at petitioner's original trial. This indeed seems to be the clear implication of this Court's opinion.

The Court, however, holds that the Fourteenth Amendment was not infringed because it considers the Court of Appeals' opinion, and the other Maryland cases dealing with Maryland's constitutional provision making juries in criminal cases "the Judges of Law, as well as of fact," as establishing that the Boblit statement would not have been admissible at the original trial on the issue of petitioner's guilt.

But I cannot read the Court of Appeals' opinion with any such assurance. That opinion can as easily, and perhaps more easily, be read as indicating that the new trial limitation followed from the Court of Appeals' concept of its power, under § 645G of the Maryland Post Conviction Procedure Act, Md Code, Art 27 (1960 Cum Supp) and Rule 870 of the Maryland Rules of Procedure, to fashion appropriate relief meeting the peculiar circumstances of this case,[2]  rather than from the view that the Boblit statement would have been relevant at the original trial only on the issue of punishment. 226 Md, at 430, 174 A2d, at 171. This interpretation is indeed fortified by the Court of Appeals' earlier general discussion as to the admissibility of third-party confessions, which falls short of saying anything that is dispositive

[373 US 94]

of the crucial issue here. 226 Md, at 427-429, 174 A2d, at 170.[3]

Nor do I find anything in any of the other Maryland cases cited by the Court (ante, pp 219,

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

220) which bears on the admissibility vel non of the Boblit statement on the issue of guilt.  None of these cases suggests anything more relevant here than that a jury may not "overrule" the trial court on questions relating to the admissibility of evidence.  Indeed they are by no means clear as to what happens if the jury in fact undertakes to do so.  In this very case, for example, the trial court charged that "in the final analysis the jury are the judges of both the law and the facts, and the verdict in this case is entirely the jury's responsibility."  (Emphasis added.)

Moreover, uncertainty on this score is compounded by the State's acknowledgment at the oral argument here that the withheld Boblit statement would have been admissible at the trial on the issue of guilt.[4] <*pg. 223>

In this state of uncertainty as to the proper answer to the critical underlying issue of state law, and in view of the fact that the Court of Appeals did not in terms

[373 US 95]

address itself to the equal protection question, I do not see how we can properly resolve this case at this juncture.  I think the appropriate course is to vacate the judgment of the State Court of Appeals and remand the case to that court for further consideration in light of the governing constitutional principle stated at the outset of this opinion.  Cf. Minnesota v National Tea Co. 309 US 551, 84 L ed 920, 60 S Ct 676.

### FOOTNOTES

**1**

[1]  Neither party suggests that the decision below is not a "final judgment" within the meaning of 28 USC § 1257(3), and no attack on the reviewability of the lower court's judgment could be successfully maintained.  For the general rule that "Final judgment in a criminal case means sentence.  The sentence is the judgment" (Berman v United States, 302 US 211, 212, 82 L ed 204, 58 S Ct 164) cannot be applied here.  If in fact the Fourteenth Amendment entitles petitioner to a new trial on the issue of guilt as well as punishment the ruling below has seriously prejudiced him.  It is the right to a trial on the issue of guilt "that presents a serious and unsettled question"  (Cohen v Beneficial Industrial Loan Corp. 337 US 541, 547, 93 L ed 1528, 1536, 69 S Ct 1221) that "is fundamental to the further conduct of the case" (United States v General Motors Corp. 323 US 373, 377, 89 L ed 311, 318, 65 S Ct 357, 156 ALR 390).  This question is "independent of, and unaffected by" (Radio Station WOW v Johnson, 326 US 120, 126, 89 L ed 2092, 2099, 65 S Ct 1475) what may transpire in a trial at which petitioner can receive only a life imprisonment or death sentence.  It cannot be mooted by such a proceeding.  See Largent v Texas, 318 US 418, 421, 422, 87 L ed 873, 876, 63 S Ct 667.  Cf. Construction & General Laborers' Union v Curry, 371 US 542, 549, 9 L ed 2d 514, 519, 83 S Ct 531.

**2** Judge Simon E. Sobeloff when Solicitor General put the idea as follows in an address before the Judicial Conference of the Fourth Circuit on June 29, 1954:

LED2                                      10

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



"The Solicitor General is not a neutral, he is an advocate; but an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the Government wins its point when justice is done in its courts."

3 See Dennis, Maryland's Antique Constitutional Thorn, 92 U of Pa L Rev 34, 39, 43; Prescott, Juries as Judges of the Law: Should the Practice be Continued, 60 Md St Bar Assn Rept 246, 253-254.

4 For one unhappy incident of recent vintage see Oklahoma Packing Co. v Oklahoma Gas & E. Co. 309 US 4, 84 L ed 537, 60 S Ct 215, that replaced an earlier opinion in the same case, 309 US 703.

5 "In the matter of confessions a hybrid situation exists. It is the duty of the Court to determine from the proof, usually taken out of the presence of the jury, if they were freely and voluntarily made, etc., and admissible. If admitted, the jury is entitled to hear and consider proof of the circumstances surrounding their obtention, the better to determine their weight and sufficiency. The fact that the Court admits them clothes them with no presumption for the jury's purposes that they are either true or were freely and voluntarily made. However, after a confession has been admitted and read to the jury the judge may change his mind and strike it out of the record. Does he strike it out of the jury's mind?" Dennis, Maryland's Antique Constitutional Thorn, 92 U of Pa L Rev 34, 39. See also Bell v State, supra (57 Md at 120); Vogel v State, (163 Md at 272).

† Md Const, Art 23; Home Utilities Co. v Revere Copper & Brass, Inc. 209 Md 610, 122 A2d 109; Raymond v State, 192 Md 602, 65 A2d 285; County Comrs. of Anne Arundel County v English, 182 Md 514, 35 A2d 135, 150 ALR 842; Oursler v Tawes, 178 Md 471, 13 A2d 763.

1 I agree with my Brother White that there is no necessity for deciding in this case the broad due process questions with which the Court deals at pp. 218, 219 of its opinion.

2 Section 645G provides in part: "If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings, and any supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper." Rule 870 provides that the Court of Appeals "will either affirm or reverse the judgment from which the appeal was taken, or direct the manner in which it shall be modified, changed or amended."

3 It is noteworthy that the Court of Appeals did not indicate that it was limiting in any way the authority of Day v State, 196 Md 384, 76 A2d 729. In that case two defendants were jointly tried and convicted of felony murder. Each admitted participating in the felony but accused the other of the homicide. On appeal the defendants attacked the trial court's denial of a severance, and the State argued that neither defendant was harmed by the statements put in evidence at the joint trial because admission of the felony amounted to admission of guilt of felony murder. Nevertheless the Court of Appeals found an abuse of discretion and ordered separate new trials on all issues.

4 In response to a question from the Bench as to whether Boblit's statement, had it been offered at petitioner's original trial, would have been admissible for all purposes, counsel for the State, after some colloquy, stated: "It would have been, yes."

LED2                                11

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

